# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4402-15T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

       Plaintiff-Respondent,

v.

J.J.,

       Defendant-Appellant.

_____

IN THE MATTER OF Ju.J.,
Jem. J., and Jer.J.,

       Minors.

_____

Submitted September 14, 2017 — Decided September 22, 2017

Before Judges Haas and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FN-03-0347-15.

Joseph J. Krakora, Public Defender, attorney for appellant (Beth Anne Hahn, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer St. Mary, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancey P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant J.J.[1] appeals from a December 15, 2015 Family Part order[2] determining that she abused or neglected her two young sons, by striking six-year-old Jem.J (Jeremy) at least ten times with a cell phone charging cord and then telling Jeremy and his seven-year-old brother Ju.J (Justin) to walk to school by themselves along a busy parkway. Defendant challenges the trial judge's finding that this conduct constituted abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b). The Law Guardian supports the trial judge's finding that the Division of Child Protection and Permanency (Division) met its burden of proving abuse or neglect by a preponderance of the evidence. Based upon our review of the record and applicable law, we affirm.

We derive the following facts from the record developed at the fact-finding hearing. On May 15, 2015, a crossing guard found Justin and Jeremy walking "alone in tears" along the roadway, and drove them to school. Once there, Justin told school officials

_____

[1] We use initials and fictitious names to protect the privacy of the family.

[2] This order became appealable as of right after the trial court entered a final order terminating the litigation on May 4, 2016.

A-4402-15T4

that his mother had gotten upset at Jeremy and began beating him with the charging cord. Jeremy had welts on his back and right shoulder. Justin reported that defendant did not beat him, but had kicked him and broken his iPad screen.

The school called the Division, which sent caseworkers to speak to the boys. The workers interviewed the children separately and they each repeated their previous statements. The children also stated that defendant usually drove them to school. However, after defendant struck Jeremy with the cord, she ordered the boys to walk to school by themselves. Jeremy reported that defendant had struck both children in the past.

The Division produced photographs of Jeremy's injuries. The child had red marks on his back, arm, and shoulder. All told, defendant struck him at least ten times with the cord. Jeremy's physician saw him on the day of the beating and reported that the child's injuries were "consistent with being hit with an electrical cord." The doctor recommended that Jeremy take children's Motrin for pain and that ice be applied to his injuries.

Defendant admitted she hit Jeremy with the cord multiple times because he and Justin were fighting and she was afraid they would wake up their sister. Defendant stated that after striking her six-year-old son, she went into the bathroom and when she came out, she found that the boys had left the house. Defendant denied

3

telling Jeremy and Justin to get out of the house. She expressed regret for her actions and noted that she was participating in all court-ordered services.

At the conclusion of the hearing, the trial judge rendered an oral decision, finding that the Division had established by a preponderance of the evidence that defendant abused or neglected the children. The judge found that the cord defendant used to strike Jeremy was a "heavy duty item" that was "almost like a whip because it's something that's not broken. It's not being hit with a soft object that would break upon impact but it's something that will remain intact after repeated and repeated and repeated uses."

The judge noted that defendant did not strike Jeremy one or two times. Instead, she struck her six-year-old son at least ten times, leaving marks each time she did. The judge found that defendant's actions greatly upset the children, who were crying as they attempted to make their own way to school. In this regard, the judge found that defendant's claim that the children left the house on their own accord was not credible. This appeal followed.

On appeal, defendant contends that "the trial court erred in finding that [she] abused and neglected her children." We disagree.

Our task as an appellate court is to determine whether the decision of the family court is supported by substantial credible

4

evidence in the record and is consistent with applicable law. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We owe particular deference to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise[.]" Id. at 413. Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div.), certif. denied, 117 N.J. 165 (1989)). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Through the admission of "competent, material and relevant evidence," the Division must prove by a preponderance of the evidence that the child was abused or neglected. N.J.S.A. 9:6-8.46(b). In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(b) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in

> providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]

"'[E]xcessive' corporal punishment" entails physical punishment that results in "bruises, scars, lacerations, fractures, or any other medical ailment suffered as a result of [a parent's] actions." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 35-36 (2011); see also Dep't of Children & Families v. K.A., 413 N.J. Super. 504, 510-11 (App. Div.) (citing to N.J.A.C. 10:129-2.2, which lists examples of abuse or neglect, including "[c]uts, bruises, abrasions, [or] welts"), certif. granted, 204 N.J. 40 (2010), appeal dismissed, 208 N.J. 355 (2011).

Courts focus on "the harm suffered by the child, rather than the mental state of the accused abuser," and a single occurrence of corporal punishment may be deemed excessive. K.A., supra, 413 N.J. Super. at 511. For example, in New Jersey Division of Youth & Family Services v. M.C. III, 201 N.J. 328, 333-35 (2010), the defendant chased down his two teenage children, caught and grabbed them, and all three ended up on the floor. Both children were injured. Id. at 335. One child sustained a bruised and swollen hand, while the other had rib tenderness and an abrasion behind the ear. Ibid. The Supreme Court held that, although the

defendant "may not have intended to harm his children, his actions were deliberate" and constituted abuse because he "intentionally grabbed the children and disregarded the substantial probability that injury would result from his conduct." Id. at 345.

Similarly, in Department of Children & Families, Division of Youth & Family Services. v. C.H., 416 N.J. Super. 414, 416-17 (App. Div. 2010), certif. denied, 207 N.J. 188 (2011), we found that a mother who struck her five-year old child for telling a neighbor the family did not have electricity in their home had inflicted excessive corporal punishment. The mother admitted to using corporal punishment since the child was three years old, and she struck the child once or twice a month "as her way to ensure that [the child] would not 'end up on the streets or doing drugs.'" Id. at 417. In the incident which led to the Division's involvement, the child sustained three- to four-inch red marks on the right side of her face, two-inch dark red scratches on her elbow and left cheek, and a greenish mark on her back. Id. at 416.

On the other hand, in P.W.R., supra, 205 N.J. at 36, the Supreme Court concluded that "[a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute 'excessive corporal punishment[.]'" Because abuse and neglect cases involving corporal punishment are "generally

fact sensitive" and "idiosyncratic[,]" the Court held each case "requires careful, individual scrutiny." Id. at 33.

Here, there was ample evidence to support the trial judge's conclusion that defendant abused or neglected her two young sons by striking Jeremy at least ten times with the cord and causing the child to suffer contusions that required medical attention. This attack occurred in Justin's presence before defendant ordered the boys to walk alone to school along a busy parkway. Both children reported that defendant had struck them in the past.

Unlike the defendant in C.H., supra, defendant did express remorse for her actions. However, we have long observed that even "a single incident of violence against a child may be sufficient to constitute excessive corporal punishment[,]" K.A., supra, 413 N.J. Super. at 511, particularly where, as here, it results in physical injuries such as bruises. P.W.R., supra, 205 N.J. at 35-36. Under these circumstances, we discern no basis for disturbing the judge's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION